**MIDWEST ELEVATOR SYSTEMS, INC., a corporation, Jim Hart, Dan Winkle, Pat Goff, and David D. Gaumer, Plaintiffs,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a corporation, Hendrickson Distributing Company, Inc., a corporation, Fab-Weld, Inc., a corporation, Power-Hose Couplings, Inc., a corporation, Defendants.**

No. 79–4102.

United States District Court,
D. Kansas.

Jan. 8, 1981.

Geisert, Heer & McKenna, Theodore C. Geisert, Kingman, Kan., for plaintiff.

Thomas L. Theis, Topeka, Kan., for St. Paul Fire & Marine Ins. Co.

Richard I. Stevenson, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., Ronald W. Fairchild, Eidson, Lewis, Porter & Haynes, Topeka, Kan., for Hendrickson Dist. Co., Inc.

Larry G. Pepperdine, Topeka, Kan., for Power-Hose Couplings, Inc.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a products liability case initially filed in state court and removed to federal court pursuant to 28 U.S.C. § 1441 on the basis of diversity of citizenship of the parties. Plaintiff Midwest Elevator Systems, Inc. [hereinafter Midwest Elevator] is a Kansas corporation. The other individual plaintiffs are Kansas residents. Defendant St. Paul Fire and Marine Insurance Company is a Minnesota corporation. The other defendants are Indiana corporations. This matter comes before the court upon defendants' (Fab-Weld, Inc. and Power-Hose Couplings, Inc.) motions to dismiss for lack of personal jurisdiction. Defendant Power-Hose Couplings, Inc. [hereinafter Power-Hose] has also moved to dismiss on the basis of improper service of process.

The parties have completed discovery on the issue of personal jurisdiction over the defendants. The discovery record shows the critical jurisdictional facts to be as follows. Hendrickson Distributing Company, Inc. [hereinafter Hendrickson], located in Russiaville, Indiana, and Power-Hose, located in Fort Wayne, Indiana, entered into a contract whereby Power-Hose agreed to assemble and deliver jacking systems for the construction of grain bins. Hendrickson had been manufacturing the system on its own before the agreement with Power-Hose. Power-Hose contacted Fab-Weld, another Fort Wayne area business, to produce the jacking frame involved in the system.

On April 28, 1977, Hendrickson sold a system to Midwest Elevator. A purchase order and down payment were mailed from Kingman, Kansas to Hendrickson on May 28, 1977. When the system was complete, Bill Warden, a representative of Hendrickson, delivered it to Midwest Elevator. The system was then paid for and Bill Warden remained in Kansas to assist in putting the system into operation. On August 17, 1980, the system failed and the bin at Morganville, Kansas collapsed. This action was filed in state court in Kingman, Kansas and later removed here.

The record discloses further the following facts about the defendants involved in the instant motions. Power-Hose is a power transmission and electronic distributing company. They sell hydraulic, mechanical and electrical power transmission equipment. They do not manufacture any equipment with the exception of light assembly work. They conduct virtually all of their business within a sixty mile radius of Fort Wayne, Indiana. Their advertising is limited to the local telephone directory yellow pages. Power-Hose built components to Hendrickson's specifications for the bin jacking system that is the subject of this lawsuit. Fab-Weld manufactures items for other companies. They do not manufacture and market any products of their own. They have conducted business in approximately seven states, none west of the Mississippi. Under the direction of Power-Hose, Fab-Weld fabricated the jacking frame involved in the bin jacking system.

Plaintiffs allege that jurisdiction over both Power-Hose and Fab-Weld exists pursuant to the Kansas long arm statute: K.S.A. § 60–308. The specific statutory provision relied upon, K.S.A. § 60–308(b)(7), provides as follows:

"(b) *Submitting to jurisdiction—process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

. . . . .

(7) Causes injury to persons or property within this state arising out of an act or omission outside of this state by the defendant, provided in addition, that at the time of the injury either (*i*) the defendant was engaged in solicitation or service activities within this state; or (*ii*) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of trade or use;"

Plaintiffs contend that the defendants caused an injury to property within this state arising out of an act or omission outside the State of Kansas. They assert that it would be consonant with fairness to subject these defendants to jurisdiction whenever their products cause injury within the State of Kansas. They believe that there can be no "unfairness in forbidding Power-Hose and Fab-Weld to disassociate themselves from their products built and sold by Hendrickson." It is the plaintiffs' position that it was foreseeable that the defendants' products would be used in Kansas.

The defendants refute the plaintiffs' contentions by asserting that they lack the requisite "minimum contacts" with Kansas necessary to subject them to personal jurisdiction under the Kansas long arm statute. Defendants contend that they had no knowledge that this system would be sold in Kansas. It is undisputed that neither of these defendants is licensed to do business in Kansas; neither maintains offices or places of business in Kansas; and neither was ever physically present in the state with regard to this transaction.

This court has recently had the opportunity to discuss in personam jurisdiction under the Kansas long arm statute in *Thermal Insulation Systems, Inc. v. Ark-Seal Corp.,* 508 F.Supp. 434 (D.Kan., 10/9/80). This court established that the following analysis is the appropriate one to be followed when considering personal jurisdiction questions:

"First, it must be determined whether the defendant's conduct falls within the scope of any of the enumerated provisions of the Kansas long arm statute. Then, it must be determined whether the defendant's contacts with the state of Kansas are sufficient to meet the due process requirements set out in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945), and further developed in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) and most recently in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Both the statutory and constitutional requirements must be met for this court to assert personal jurisdiction over the defendant."

In cases based upon diversity jurisdiction, personal jurisdiction over a defendant is to be determined in accordance with the law of the state where the federal district court is located. *Wilshire Oil Co. v. Riffe*, 409 F.2d 1277 (10th Cir. 1969); *Stonecipher v. Sexton*, 54 F.R.D. 435 (D.Kan. 1972). The burden is on the plaintiff to present a prima facie case that the constitutional and statutory requirements for the assumption of personal jurisdiction have been satisfied. *Thermal Insulation Systems, Inc. v. Ark-Seal Corp., supra; Ammon v. Kaplow*, 468 F.Supp. 1304 (D.Kan.1979). A court may consider affidavits and documentary evidence in considering whether such a showing has been made. *Id.* The court shall give the plaintiff the benefit of all factual doubts. *Id.* With these considerations in mind, this court will first look at plaintiffs' contention that jurisdiction exists under K.S.A. § 60–308(b)(7).

Subsection (b)(7), formerly (b)(5), was borrowed from Wisconsin law, and was intended to provide jurisdiction over foreign manufacturers or suppliers in product liability cases. *Tilley v. Keller Truck and Implement Corp.*, 200 Kan. 641, 438 P.2d 128 (1968); *J.E.M. Corp. v. McClellan*, 462 F.Supp. 1246 (D.Kan.1978). Few Kansas cases have discussed in any detail the statutory requirements of K.S.A. § 60–308(b)(7). *See Tilley v. Keller Truck and Implement Corp., supra; J.E.M. Corp. v. McClellan, supra; Murrell v. Parnes*, No. 77–1461 (D.Kan., 5/22/79); *Soper v. Signode Corp.*, No. 77–2014 (D.Kan., 3/3/78). This court will focus its discussion on K.S.A. § 60–308(b)(7)(ii) since plaintiffs have not controverted defendants' evidence that they do not and were not engaged in solicitation or service activities within Kansas as provided in K.S.A. § 60–308(b)(7)(i). No Kansas cases have interpreted the requirement concerning the use of a defendant's products in the ordinary course of trade or use, but the Wisconsin courts have interpreted the Wisconsin statute after which the Kansas provision was copied. These cases have held that the standard is not met when only one product marketed by the defendant is within the forum at the time of the injury. *McPhee v. Simonds Saw and Steel Co.*, 294 F.Supp. 779 (W.D.Wis.1969); *Davis v. Mercier-Freres*, 368 F.Supp. 498 (E.D.Wis.1973); *Hasley v. Black, Sivalls & Bryson, Inc.*, 70 Wis.2d 562, 235 N.W.2d 446 (1975); *Schmitz v. Hunter Machinery Co.*, 89 Wis.2d 388, 279 N.W.2d 172 (1979).

In *McPhee*, the plaintiff was injured by an allegedly defective saw. The manufacturer and distributor of one of the major component parts of the product moved for dismissal for lack of personal jurisdiction. The court granted the motion to dismiss on the basis that the record showed that only a single unit produced by that defendant was in use in the State of Wisconsin. The court discussed the Wisconsin statute, which is in all material respects identical to the Kansas statute, as follows:

"Plaintiffs contend that personal jurisdiction over defendant Tyrone Hydraulics is provided by § 262.05(4)(b). From the present state of the record it appears that the carriage drive, included in the carriage and saw unit in question, constituted the only 'products, materials or things, processed, serviced or manufactured' by Tyrone Hydraulics 'used or consumed within this state in the ordinary course of

trade'. Plaintiffs contend that the statute is satisfied if a single item, processed, serviced or manufactured by the defendant is used or consumed within the state in the ordinary course of trade.

"I decline to construe § 262.05(4) in the manner for which plaintiffs contend. I construe § 262.05(4) to require that at the time of the injury more than one item processed, serviced or manufactured by defendant, was used or consumed within this state in the ordinary course of trade. The use of the plural ('products, materials, or things') in subsection (b) indicates that more than one item processed, serviced or manufactured by a defendant and used or consumed in the state is necessary for the exercise of in personam jurisdiction. This construction finds support in the revision notes which specifically indicate that § 262.05(4) requires some additional contact between the defendant and the state beyond the occurrence of an injury in the state."

294 F.Supp. at 782.

The plaintiffs in the instant case argue that since the bin jacking system involved in this action was a new product, then perhaps the requirements of K.S.A. § 60–308(b)(7)(ii) should not be strictly followed. The plaintiffs state:

"What their [the defendants] business was before, and what it is now, has little bearing on what it was in April, 1977, when they introduced the product directly into Kansas, the largest grain growing state in the Union. If the product had not been defective it is possible the demonstration of their product by a company like Midwest Elevator Systems throughout the States of Kansas, Nebraska, Missouri, Oklahoma, and New Mexico, states in which this company had completed projects, hundreds of units, not just one, might have sold in the State of Kansas to other bin erection contractors." Brief of Plaintiffs in Opposition to Defendants Fab-Weld, Inc., and Power Hose Couplings, Inc. Motions to Dismiss for Lack of Jurisdiction at p. 9.

■ It is clear from a reading of K.S.A. § 60–308(b)(7) that the legislature intended that something more than a single isolated injury had to occur before jurisdiction could be exercised. Provisoes (i) and (ii) supply the additional factor. This court firmly believes that these requirements should not be overlooked. Obviously, the legislature had some purpose in enumerating the various "acts" that purport to supply the basis for jurisdiction. Therefore, the court will not speculate, as the plaintiffs desire the court to do, on what "might" have happened if this product had not been defective. There is no evidence to support the plaintiffs' allegation that other units would have been used in Kansas. The plaintiffs incorrectly state the law when they assert that the defendants' business before or after the accident has little bearing in this case. It is these very factors that the legislature intended the court to look at when it added provisoes (i) and (ii) to § 60–608(b)(7). Therefore, the complaint must be dismissed as to Fab-Weld and Power-Hose as a result of plaintiffs' failure to establish facts essential to the exercise of personal jurisdiction over these defendants under the terms of the Kansas long arm statute.

■ Even assuming that an expansive reading of the Kansas long arm statute would allow the plaintiffs to meet the statutory requirements, the court believes that the plaintiffs have not established in personam jurisdiction under the requirements of the Due Process Clause of the Fourteenth Amendment. This court in *Thermal Insulation Systems, Inc. v. Ark Seal Corp., supra,* delineated the analysis required under due process considerations. In that case, we stated:

"The due process clause of the Fourteenth Amendment of the United States Constitution operates as a limitation on jurisdiction over nonresidents. *Kulko v. Superior Court, supra,* 436 U.S. at 91 [98 S.Ct. at 1696]. Thus, our application of [the particular enumerated subsection of the Kansas long arm statute] must comport with the requirements of due process

to be valid. In a recent opinion, *World-Wide Volkswagen Corp. v. Woodson, supra,* the United States Supreme Court reaffirmed the ability of courts to exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state. 444 U.S. at 291 [100 S.Ct. at 564]. Under due process analysis, a court must look to the 'quality and nature' of the defendant's activity to determine whether it is both 'reasonable' and 'fair' to require the defendant to conduct his defense in the forum state. *Kulko, supra,* 436 U.S. at 92 [98 S.Ct. at 1697]. In every case there must be 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, [1239] 2 L.Ed.2d 1283 (1958). Actual physical contacts by the defendant with the forum state are not required by the due process clause. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 222, 78 S.Ct. 199, [200] 2 L.Ed.2d 223 (1957); *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933 (10th Cir. 1977); *Rosedale State Bank and Trust Co. v. Stringer, supra,* 2 Kan. App.2d [331] at 333, 579 P.2d [158] at 160.

"Like other tests requiring the determination of reasonableness or fairness, the 'minimum contacts' test precludes mechanical application. Instead, 'the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.' *Kulko, supra,* 436 U.S. at 92 [98 S.Ct. at 1697]. Inconvenience to the parties and the interest of the state in providing a forum for the action are also relevant considerations. *Kulko, supra,* 436 U.S. at 97 [98 S.Ct. at 1699]; *J.E.M. Corp. v. McClellan, supra* at 1255; *Pedi Bares, supra,* at 937."

As mentioned above, the latest pronouncement by the Supreme Court on personal jurisdiction is *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In that case, a products liability action was instituted in Oklahoma by New York residents who were injured in Oklahoma while driving to a new home. The automobile in question was purchased in New York and the defendants included the automobile retailer and its wholesaler, both of whom were New York corporations having no contacts with the State of Oklahoma. The Court held that due process would not permit Oklahoma to impose jurisdiction over the retailer or distributor. In so doing, the Court rejected the argument that jurisdiction was proper because the mobility of automobiles made it "foreseeable" that a purchaser in New York might drive the automobile through Oklahoma. The Court stated that:

"the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. [Citations omitted.] The Due Process Clause, by ensuring the 'orderly administration of the laws,' *International Shoe Co. v. Washington,* 326 U.S. at 319, 66 S.Ct. at 160, gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

444 U.S. at 297, 100 S.Ct. at 567.

In denying in personam jurisdiction under its facts, the *World-Wide Volkswagen* court acknowledged and approved the decision in *Tilley v. Keller Truck and Implement Corp., supra.* *Tilley* is the leading Kansas Supreme Court case discussing subsection (b)(7). In that case, plaintiff sued International Harvester Company and Keller Truck and Implement Company for personal and property injuries sustained when a wheel came off plaintiff's truck while he was passing through Kansas. The truck had been sold to plaintiff Tilley by Keller, who had also serviced the vehicle. Keller knew the plaintiff would be driving the truck across Kansas. Keller was a Colorado

corporation doing what the court called a "strictly local retail business" in Lafayette, Colorado, 150 miles from the Kansas border. It never solicited business or engaged in any other activity in Kansas, so long arm jurisdiction over Keller had to depend on whether things serviced or processed by the defendant in Colorado were used or consumed in Kansas in the ordinary course of trade or use. The court held that the exercise of personal jurisdiction over Keller in Kansas would not be consistent with due process. The plaintiff had argued that the important consideration was whether or not Keller could reasonably have foreseen the potential consequences in Kansas from the negligent servicing or inspection of the truck. The court found, however, that foreseeability was not enough to satisfy due process. The court stated:

> "there must be something more in 'product hazard' cases than a foreseeable injury from the product to fulfill the minimum contact requirement of due process. If the defendant advertises, solicits or sells its product in the forum state it then has or can anticipate some direct or indirect financial benefit from the sale, trade, use or servicing of its products in the forum state. It is then subject to *in personam* jurisdiction. The particular product or service causing the injury need not be sold or performed in the forum state but the defendant must reasonably have or anticipate financial benefit from the sale, trade, use or servicing of its products in the forum state."

200 Kan. at 648, 438 P.2d 128.

The plaintiffs in this case have cited several cases concerning one who places an item in the "stream of commerce" which causes injury within a state. There is little doubt that the vitality of such decisions, as applied to one who is not a nationwide manufacturer and who has no other contacts with the forum state, has been seriously undermined by *World-Wide Volkswagen*. Furthermore, a close examination of the stream of commerce decisions reveals that the manufacturers or distributors involved in those cases had all made a deliberate decision to market their products in the forum state by utilizing an interstate distribution network. While most of the parties involved did not themselves deal with any one in the forum state, the courts took the position that the companies had placed their products into the forum by virtue of their knowing use of a distributive scheme. In the instant case, the record does not disclose a distributive or marketing scheme whereby either of the defendants sought to introduce the bin jacking system into Kansas. To the contrary, the record shows that Hendrickson was very secretive in their relations with Power-Hose concerning the distribution of the bin jacking system in an effort to keep them from competing with them. There has been some dispute among the parties as to what label should be attached to the defendants. Plaintiffs contend that Hendrickson is the "exclusive" distributor of the system for the manufacturers, Power-Hose and Fab-Weld. The court finds this contention does not accurately depict the commercial context under which this case arose. Hendrickson was not the usual passive distributor of a product. They were in fact the developers of this bin jacking system since they had manufactured it prior to the time that Power-Hose and Fab-Weld became involved. The record does not disclose any agency relationship whatsoever among the parties. It seems relatively clear that Power-Hose and Fab-Weld had little idea where this product would be marketed. The court believes it is simply irrelevant as to what term is used to describe the actions of Fab-Weld and Power-Hose.

One court has seized upon dicta in *World-Wide Volkswagen* which appears to allow an exception to the curtailment of the "stream of commerce" doctrine. In *Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir. 1980), a products liability action was brought in Texas against a Japanese cigarette lighter manufacturer and an American distributor of the lighter to recover for injuries sustained when the lighter allegedly malfunctioned. The Fifth Circuit reversed the district court which had dismissed the Japanese manufacturer for lack of personal jurisdiction and held that the Japanese manu-

facturer, which had manufactured, assembled, sold, and delivered in Japan millions of lighters to an American distributor, with the understanding that the distributor would be the exclusive distributor for the lighters in the United States and would be selling the lighters to a customer with national retail outlets, had reason to know or expect that the lighters would reach Texas in the course of the distribution chain. Therefore, the court found that the Japanese manufacturer was subject to in personam jurisdiction in Texas. The *Oswalt* court relied upon the following language from *World-Wide Volkswagen*:

> "When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' . . . it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence, if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." (citation omitted)

616 F.2d at 199.

The *Oswalt* court distinguished the factual situation in *World-Wide Volkswagen* from that of the case before it and determined that its case involved the commercial context and the precise marketing distribution system contemplated by the dictum in *World-Wide Volkswagen*. In *Oswalt*, the court felt it was important that the Japanese manufacturer had not attempted in any way to limit the states in which the lighters could be sold. In fact, the record showed it had every reason to believe that its product would be sold nationwide. In the instant case, this factor is simply not present. It would have been difficult for Fab-Weld or Power-Hose to have attempted to place limits on its sales since Hendrickson was very secretive about its plans for distribution. The test derived by the *Oswalt* court interpreting the dictum of *World-Wide Volkswagen* was that when a manufacturer places its product in the stream of commerce with the "expectation" that it will be purchased in the forum state, then it cannot avail itself of the Due Process Clause to escape the jurisdiction of the forum state when its product turns out to be defective. In this case, we are not convinced that either Power-Hose or Fab-Weld had an expectation that this system would be purchased in Kansas. While the plaintiffs have vigorously argued that both defendants knew or should have known that these bin jacking systems would be distributed throughout the grain belt, this court cannot accept that and further doesn't even believe that they could have reasonably expected it. While Kansas has an interest in providing a forum for its citizens injured from tortious acts, this court believes that fairness in litigating this action in Kansas against defendants, Fab-Weld and Power-Hose, weighs against the contentions of the plaintiff. Therefore, this court finds that the facts of this case are insufficient to impose in personam jurisdiction under the Due Process Clause of the Fourteenth Amendment. The court's disposition of the instant motions to dismiss on the issue of personal jurisdiction makes it unnecessary to consider the issue of improper service of process raised by defendant Power-Hose.

For the reasons stated above, IT IS THEREFORE ORDERED that defendants' (Fab-Weld and Power-Hose) motions to dismiss are hereby granted.

IT IS SO ORDERED.