**NATIONAL GYPSUM COMPANY, Plaintiff,**

v.

**DALEMARK INDUSTRIES, INC., and American Ink Jet Corporation, Defendants.**

**No. 89–1525–C.**

United States District Court, D. Kansas.

Sept. 20, 1991.

As Amended Oct. 3, 1991.

---

Joseph R. Colantuono, Polsinelli, White, Vardeman & Shalton, Overland Park, Kan., for plaintiff.

Rex G. Beasley & Susan P. Selvidge, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for Dalemark.

Martin W. Bauer, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, Kan., for American Ink Jet.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on several motions. Defendant American Ink Jet Corporation ("AIJ") moves to dismiss the plaintiff's action pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. (Dk. 102). Plaintiff National Gypsum Company ("NGC") moves for partial summary judgment against defendants Dalemark Industries, Inc. ("Dalemark") and AIJ pursuant to Fed.R.Civ.P. 56. (Dk. 77). Defendant Dalemark seeks summary judgment pursuant to Fed.R.Civ.P. 56 against the plaintiff NGC. (Dk. 93).

NGC is a manufacturer of gypsum wallboard and has an operating division, Goldbond Building Products ("Goldbond"), in Medicine Lodge, Kansas. Dalemark is a distributor of ink and manufacturer of other related printing products. AIJ is a manufacturer of ink. NGC claims that the printing ink ordered in September of 1987 from Dalemark, manufactured by AIJ, delivered to Goldbond in October of 1987, and used by Goldbond for printing on the face of wallboard was defective as it bled through tape, paint, and joint compound.

Oral argument would not materially assist the court in deciding these motions. The court will address the motions *seriatim.*

### PERSONAL JURISDICTION

Upon a pretrial motion to dismiss for lack of personal jurisdiction, the plaintiff must make a prima facie showing that statutory and due process requirements are satisfied. *Behagen v. Amateur Basketball Ass'n of the United States,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). Affidavits and other documentary evidence may be submitted for the court's

consideration. *Thermal Insulation Systems v. Ark–Seal Corp.,* 508 F.Supp. 434, 437 (D.Kan.1980). Allegations in the complaint are accepted as true unless controverted by the affidavits. *Pytlik v. Professional Resources, Ltd.,* 887 F.2d 1371, 1376 (10th Cir.1989). If the jurisdictional allegations in the complaint are challenged, the plaintiff must then support them with competent proof. *Id.* When affidavits are conflicting, the factual disputes are resolved in favor of the plaintiff's prima facie case. *Behagen,* 744 F.2d at 733. Plaintiff is entitled to the benefit of any factual doubts. *Ammon v. Kaplow,* 468 F.Supp. 1304, 1309 (D.Kan.1979).

In September of 1987, NGC contracted with Dalemark to supply NGC with a single 55 gallon drum of Dale No. 607 ink at its Goldbond plant in Medicine Lodge, Kansas. Dalemark then contracted with AIJ to have the ink manufactured and shipped. On October 1, 1987, AIJ formulated and manufactured a drum of ink, placed Dale No. 607 labels on the drum, and shipped it directly to Medicine Lodge, Kansas. This drum actually contained Dale No. 115 black ink. AIJ officials discovered this labelling mistake and contacted Dalemark and the carrier in an effort to stop this drum of ink from reaching Goldbond. AIJ never contacted NGC or Goldbond regarding this shipping mix-up. On October 5, 1987, AIJ formulated and manufactured a 55 gallon drum of Dale No. 607 ink, placed the correct Dalemark labels on it, and shipped it directly to Medicine Lodge, Kansas. In October of 1987, Goldbond received only one drum of ink marked with Dale No. 607 labels. There appears to be a question of fact as to which drum of ink was received by Goldbond.

Goldbond placed this drum of ink into production on or about October 18, 1987, and began receiving complaints shortly thereafter that the ink was bleeding through the wallboard finishes. In December of 1987, Goldbond received another barrel of ink. The evidence of record shows this barrel was sent directly from Dalemark to Goldbond without plaintiff making an order or request for more ink.

AIJ is a Massachusetts corporation with its sole place of business there. In 1987, AIJ's labor force consisted of three people, including its president. No agent or representative has ever appeared in Kansas on behalf of AIJ. There was no contact between AIJ and NGC about this shipment until the bleeding problem was brought to AIJ's attention in December of 1987. AIJ has not shipped any ink products directly to Kansas other than the single drum of ink which is the subject of this litigation. AIJ has not transacted business in Kansas either directly or by advertisement. AIJ does not advertise any of its products for sale in Kansas. Other than this lawsuit, AIJ has no contacts with Kansas.

■ To establish personal jurisdiction in a diversity case, the plaintiff must meet the requirements of the forum's long-arm statute and the federal Constitution. *Williams v. Bowman Livestock Equipment Co.,* 927 F.2d 1128, 1131 (10th Cir. 1991). Because K.S.A. 60–308(b), the Kansas long-arm statute, is to be " 'liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of' " the federal Constitution, the two inquiries are basically identical. *Equifax Services, Inc. v. Hitz,* 905 F.2d 1355, 1357 (10th Cir.1990) (quoting *Volt Delta Resources, Inc. v. Devine,* 241 Kan. 775, 777, 740 P.2d 1089 (1987)). Following the practice endorsed in *Equifax Services, Inc.,* 905 F.2d at 1357–60, the court will proceed directly to the relevant due process analysis. *See, e.g., Deines v. Vermeer Mfg. Co.,* 752 F.Supp. 989, 999 (D.Kan.1990).

■ Due process is upheld when the non-resident defendant and the forum have such "minimum contacts" that the exercise of personal jurisdiction would "not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). Due process is to protect a non-resident's liberty interest in not being subject to judgments from forums to which he has no meaningful con-

tacts, ties or relations. *Home–Stake Production v. Talon Petroleum, C.A.,* 907 F.2d 1012, 1020 (10th Cir.1990). The sufficiency of the contacts is evaluated against a three-prong test:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

*Taylor v. Phelan,* 912 F.2d 429, 432 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991) (quoting *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1419 n. 6 (10th Cir.1988) [quoting *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1287 (9th Cir.1977) ] ).

■■■■ The purposeful availment requirement serves two purposes. "[I]t identifies acts that a defendant would reasonably expect to subject her to jurisdiction in the particular forum[, and] it ensures that only the *defendant's* acts directed at the forum establish jurisdiction." *Kennedy v. Freeman,* 919 F.2d 126, 128 (10th Cir.1990) (emphasis in original). This requirement effectively prevents a defendant from being haled into a jurisdiction "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The contacts must amount to a "substantial connection." *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). These contacts provide "fair warning" to a defendant that his actions may sustain a foreign forum's exercise of jurisdiction over him. *Burger King Corp.,* 471 U.S. at 472–473, 105 S.Ct. at 2181–2183. Purposeful availment analysis generally demands that the defendant affirmatively act to allow or promote the transaction of business within that forum. *Rambo,* 839 F.2d at 1420.

■■■■ Personal jurisdiction may be properly exercised over a nonresident who " 'purposefully directs' " his activities toward forum residents." *Burger King Corp.,* 471 U.S. at 473, 105 S.Ct. at 2182. The rationale behind this extension of jurisdiction is also stated in *Burger King,* as follows:

A State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.... Moreover, where individuals "purposefully derive benefit" from their interstate activities, ..., it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. And because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity....

471 U.S. at 473–74, 105 S.Ct. at 2182–83. Where a defendant purposefully directs his actions towards a forum or purposefully avails himself of benefits from that forum, he should reasonably anticipate being haled into that forum's court.

■■■■ Once purposeful minimum contacts with the forum have been found, the court then scrutinizes the contacts under other factors to determine if jurisdiction would be consistent with notions of "fair play and substantial justice." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160). This reasonableness inquiry consists of several factors, including:

"The burden on the defendant," "the forum state's interest in adjudicating the dispute," "the plaintiff's interest in ob-

taining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental social policies." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. [286] at 292 [100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980)].
*Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184.

■ AIJ does not have the minimum contacts with Kansas for this court constitutionally to exercise personal jurisdiction over it. The foreseeability that underlies due process analysis is not that of defendant's product reaching Kansas and causing an injury there, but it is that defendant's " 'conduct and connection with the forum state [Kansas] are such that he should reasonably anticipate being haled into court there.' " *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. at 567). It is not reasonable for AIJ to have anticipated that it could be haled into the Kansas courts merely by shipping a single drum of ink to Goldbond pursuant to a contract between AIJ and Dalemark. AIJ was simply carrying out its performance under a contract with Dalemark, a New Jersey corporation with its principal place of business also in New Jersey. The contract called for AIJ to formulate and manufacture ink according to Dalemark specifications, to place Dalemark's labels on the ink, to bill Dalemark for the ink, to accept payment from Dalemark for the ink, and to deliver the ink to Dalemark's customer, Goldbond, which happened to be an operating plant division of NGC located in Kansas. This single contact with Kansas is too attenuated to sustain the exercise of personal jurisdiction.

AIJ did not purposefully direct its business activities towards a Kansas resident nor purposefully availed itself of the benefits of doing business in Kansas. AIJ entered into no contract with Goldbond to manufacture or deliver ink. All negotiations and discussions for Goldbond's purchase of the ink occurred between NGC and Dalemark. Consistent with Dalemark's wishes, AIJ never even communicated with Goldbond prior to shipping the ink. AIJ had no continuing or existing business relationship with Goldbond. There is no evidence that plaintiff knew AIJ would be manufacturing the ink which it was purchasing from Dalemark. Consequently, neither AIJ nor NGC had any reason to contemplate this single transaction through Dalemark would be the foundation for a continuing business relationship.

■ AIJ shipped the ink to Kansas because plaintiff had ordered the ink from Dalemark. Dalemark, in turn, requested AIJ to manufacture the ink and ship it directly to plaintiff's plant in Kansas. All of AIJ's actions towards Kansas were taken at the direction of someone else. The unilateral activities of another party or a third person are not sufficient contacts with the forum state. *Home–Stake Production,* 907 F.2d at 1020.

AIJ did not solicit business activities in Kansas. AIJ did not advertise in Kansas. The court has no basis on this record for characterizing AIJ's business activities as those of a nationwide manufacturer who deliberately chose or created an interstate distribution network for marketing its product. *See Midwest Elevator Systems, Inc. v. St. Paul Fire & Marine Ins. Co.,* 508 F.Supp. 578, 584 (D.Kan.1981). Nor are there any facts alleged or presented to show Dalemark was an agent or mere instrumentality of AIJ. *See Pytlik,* 887 F.2d at 1376. In light of all these circumstances, the court finds that AIJ's single shipment of ink to Dalemark's customer in Kansas is not a substantial connection between AIJ and Kansas. The court grants AIJ's motion to dismiss for lack of personal jurisdiction.

## SUMMARY JUDGMENT

NGC moves for summary judgment against both defendants on liability issues. In light of the above ruling on personal jurisdiction, the court will not consider the motion against AIJ. Plaintiff seeks sum-

mary judgment against Dalemark on the following counts: (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty of merchantability; and (4) breach of implied warranty of fitness for a particular purpose. Dalemark has filed a cross motion for summary judgment arguing it is exempt from liability by the terms of K.S.A. 60–3306, a provision of the Kansas Product Liability Act, K.S.A. 60–3301—3307.

A motion for summary judgment gives the judge an initial opportunity to assess the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2511–2512.

An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact is "material" if proof of it might affect the outcome of the lawsuit. 477 U.S. at 249, 106 S.Ct. at 2510. Factual inferences are drawn to favor the existence of triable issues, and where reasonable minds could ultimately reach different conclusions, summary judgment is inappropriate. *See Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476–77 (10th Cir.1990).

The movant's initial burden under Fed. R.Civ.P. 56 is to show the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 345 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). The movant must specify those portions of " 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any,' " which dem-

onstrate the absence of a genuine issue of fact. *Windon*, 805 F.2d at 345 (quoting Fed.R.Civ.P. 56(c)). It may be sufficient for the movant to establish that the alleged factual issues are without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in Rule 56(c). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The evidence is deemed true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

■ Most of the facts critical to plaintiff's claims have been controverted by Dalemark's response. For example, Dalemark's response raises genuine issues of material fact over whether the mislabelled drum of ink ever reached Goldbond and whether the ink when it was received at Goldbond was nonconforming or was later altered at Goldbond. The shipping documents sustain a reasonable inference that the mislabelled drum was diverted to Dalemark's warehouse and never reached Goldbond. The infrared analysis conducted on the "bleeding ink" shows the presence of ingredients that are additional to and different from those used by AIJ in formulating and manufacturing the ink for Dalemark. AIJ has admitted that its formulation of Dale No. 607 differed from the Dale No. 607 which Dalemark had sent to plaintiff in the past. AIJ, however, denies that this difference is the reason for the bleeding. In fact, the drum manufactured by AIJ in November for Dalemark did not bleed, and AIJ maintains that it was made with the same formula used in October. Even assuming a duty on the part of Dalemark, by contract or by warranty, express or implied, material facts are controverted

on the question of breach and causation. For this reason, the plaintiff's motion for summary judgment against Dalemark is denied.

 Dalemark contends it is exempted from liability by the terms of the retailer exception found in K.S.A. 60–3306, which provides:

A product seller shall not be subject to liability in a product liability claim arising from an alleged defect in a product, if the product seller establishes that:

(a) Such seller had no knowledge of the defect;

(b) Such seller in the performance of any duties the seller performed, or was required to perform, could not have discovered the defect while exercising reasonable care;

(c) The seller was not a manufacturer of the defective product or product component;

(d) The manufacturer of the defective product or product component is subject to service of process either under the laws of the state of Kansas or the domicile of the person making the product liability claim; and

(e) Any judgment against the manufacturer obtained by the person making the product liability claim would be reasonably certain of being satisfied.

Condition (d) obviously is not met by virtue of the court's dismissal of AIJ for lack of personal jurisdiction.[1] Dalemark's motion for summary judgment is denied.

IT IS THEREFORE ORDERED that defendant AIJ's motion to dismiss for lack of personal jurisdiction (Dk. 102) is granted;

IT IS FURTHER ORDERED that plaintiff NGC's motion for partial summary judgment (Dk. 77) is denied;

IT IS FURTHER ORDERED that defendant Dalemark's motion for summary judgment (Dk. 93) is denied.

---

[1] Plaintiff also presents evidence showing that Dalemark held itself out as the manufacturer thereby bringing itself within the statutory definition of "manufacturer," K.S.A. 60–3302(b) and taking itself out of the retail seller exception, K.S.A. 60–3306(c). Dalemark replies with the circular argument that the definition of "seller," K.S.A. 60–3302(a) includes a manufacturer. The terms of K.S.A. 60–3306(c) are clear that it protects only those sellers that are not manufacturers. Dalemark is not entitled to the liability exemption afforded retail sellers in K.S.A. 60–3306.