BLUE BEACON INTERNATIONAL, INC.;
Blue Beacon Management, Inc.; Blue
Beacon, U.S.A., L.P., a Kansas limited
Partnership; and Blue Beacon U.S.A.,
L.P. II, a Kansas Limited Partnership,
Plaintiffs,

v.

AMERICAN TRUCK WASHES, INC.
and Ernest Maynard Overbey,
Jr., Defendants.

Civ. A. No. 92–4078–DES.

United States District Court,
D. Kansas.

Sept. 30, 1994.

Dana P. Ryan, Clark, Mize & Linville, Chtd., Salina, KS, Aubrey G. Linville, Santa Fe, NM, for Blue Beacon Intern., Inc.

Lawton M. Nuss, Dana P. Ryan, Clark, Mize & Linville, Chtd., Salina, KS, Aubrey G. Linville, Santa Fe, NM, for Blue Beacon Management, Inc., Blue Beacon U.S.A., L.P., Blue Beacon U.S.A., L.P. II.

K. Gary Sebelius, Catherine A. Walter, Wright, Henson, Somers, Sebelius, Clark & Baker, Topeka, KS, David J. Schwartz, Harry E. Van Camp, Louderman, Hayes, Van Camp, Priester, Strother & Schwartz, Madison, WI, for defendants.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' Motion to Dismiss for lack of personal jurisdiction (Doc. 10). Plaintiff opposes the motion.

### I. NATURE OF THE CASE

Blue Beacon International, Inc., ("Blue Beacon"), a Kansas corporation, is in the business of developing, managing and operating truck washes. Over the course of time, Blue Beacon has researched and developed what it alleges are trade secrets as defined by the Kansas Uniform Trade Secrets Act, K.S.A. 60–3320, et seq. The trade secrets and other confidential information were developed in Salina, Kansas. Blue Beacon alleges it has made efforts to maintain the secrecy of the trade secrets particularly as it relates to the Blue Beacon Reagan and the Blue Beacon Tip Protectors.

Defendant Ernest Overbey ("Overbey") was employed by Blue Beacon in Virginia, Kentucky and Texas. Overbey was subject to a written employment contract. Overbey left Blue Beacon's employ in August 1990, and was later hired by American Truck Washes ("ATW").

ATW maintains two truck wash facilities, one in Stony Ridge, Ohio, and one in Wadsworth, Illinois.

Blue Beacon claims ATW uses spray guns and tip protectors which are virtually identical to the Blue Beacon Reagan and the Blue Beacon Tip Protectors.

Blue Beacon claims that Overbey and ATW and other former Blue Beacon employees, who were later employed by ATW, conspired, stole and installed the Blue Beacon Reagan and Blue Beacon Tip Protectors in ATW facilities.

This action was commenced on claims which include: breach of contract; breach of implied contractual and employment obligations; misappropriation of trade secrets; misappropriation of trade secrets and other secret and confidential information; unfair competition; tortious interference with contract; and conspiracy.

### II. PROCEDURAL BACKGROUND

Plaintiffs Blue Beacon International, Inc.; Blue Beacon Management, Inc.; Blue Beacon U.S.A.. L.P., a Kansas Limited Partnership; and Blue Beacon U.S.A., L.P. II, a Kansas Limited Partnership commenced an action against defendants American Truck Washes, Inc.; Ernest Maynard Overbey, Jr.; Ricky Joe Hibbard; and Jim Haynes in the Saline County, Kansas, District Court on March 2, 1992.[1]

On April 3, 1992, defendants removed the action to this court. On May 26, 1992, defendants filed a motion to dismiss pursuant to

---

1. By separate settlement orders, Hibbard and Haynes are no longer parties to this action.

Fed.R.Civ.P. 12(b)(2) and (3). Defendants claim, in their Memorandum in Support of the Motion to Dismiss, that the Kansas Long–Arm Statute, K.S.A. 60–308(b)(2) and (5) is not applicable in this case. Furthermore, defendants argue plaintiffs cannot establish that jurisdiction over the defendants meets the constitutional requirements of due process.

Plaintiffs in their Memorandum in Opposition to the Motion to Dismiss assert that they have made a prima facie showing of jurisdiction under the Kansas Long–Arm Statute and the Due Process requirements of the Constitution.

## III.  *FACTUAL BACKGROUND*

The following facts are uncontroverted.

1.  Plaintiffs (Blue Beacon) are Kansas corporations and/or limited partnerships.

2.  Defendant ATW is a Wisconsin corporation with its principal place of business in Madison, Wisconsin.

3.  Blue Beacon claims a truck spray wash gun known as the Reagan is a trade secret which it believes defendants misappropriated.

4.  Blue Beacon claims its tip protector is a trade secret which it believes the defendants misappropriated.

5.  ATW owns and operates two truck wash facilities, one located in Wadsworth, Illinois, and one in Stoney Ridge, Ohio.

6.  Blue Beacon owns and operates 53 truck washes in the United States and Canada.

7.  Four to six Reagans and tip protectors are located in each Blue Beacon truck wash bay.

8.  Blue Beacon truck wash customers have viewed the truck wash spray guns, Reagans, and tip protectors.

9.  Blue Beacon employment contracts do not specifically identify the Reagans or the tip protectors as trade secrets.

10.  Blue Beacon employment contracts refer generally to trade secrets, but cover all equipment, not just equipment developed by Blue Beacon.

11.  Blue Beacon employment contracts also refer to Blue Beacon's other secret and confidential information.

12.  The truck wash spray gun modifications which Blue Beacon deems trade secrets involve a t-pipe, a ball valve, a check valve, an elbow, a nipple and a second hose running to the gun.

13.  Blue Beacon uses spray guns that are available from commercial vendors and the components used to modify the truck wash spray guns are, for the most part, standard, off the shelf items.

14.  Blue Beacon makes no effort to conceal the fully-assembled Reagan, but does take precautions to protect the secrecy of the components and how they are assembled.

15.  The Blue Beacon tip protectors are plastic cylinders threaded on the inside.

16.  The purpose of the Blue Beacon spray gun modifications is to inject a low-pressure chemical into a high pressure spray wash line.

17.  The injection of low-pressure fluid into a high-pressure line is not necessarily unique in other industries, but apparently the concept is new to the spray wash lines in the truck wash industry.

18.  The valves used in the Reagan are commercially available.

19.  The Reagan technology is not complex.

20.  Trace Walker is the president of Blue Beacon.

21.  Thousands of Blue Beacon employees have handled the Reagan over the years.

## IV.  *MOTION TO DISMISS*

### A.  *The Jurisdictional Inquiry*

█  A two-step analysis is required in resolving a question of jurisdiction.  First, the court must determine whether the defendant's conduct is within the scope authorized by the Kansas Long–Arm Statute. *Ray v. Heilman*, 660 F.Supp. 122, 123 (D.Kan.1987). Second, the exercise of jurisdiction must comport with constitutional due process. *Equifax Services, Inc. v. Hitz*, 905 F.2d 1355,

1357 (10th Cir.1990). In Kansas, the two inquiries are virtually identical because the long-arm statute "is liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fourteenth Amendment to the U.S. Constitution." *Volt Delta Resources, Inc v. Devine,* 241 Kan. 775, 740 P.2d 1089, 1092 (1987).

■ The constitutional touchstone for purposes of personal jurisdiction remains "whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The contacts must amount to a substantial connection, *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) and must give a defendant fair warning that his actions may result in the forum's exercise of jurisdiction over him. *Burger King Corp.,* 471 U.S. at 472–73, 105 S.Ct. at 2181–82. The nonresident defendant must purposefully direct his activities toward the forums' residents. *National Gypsum Co. v. Dalemark Industries, Inc.,* 773 F.Supp. 1476, 1480 (D.Kan.1991) quoting *Burger King Corp.,* 471 U.S. at 473, 105 S.Ct. at 2182.

The sufficiency of the contacts as it relates to business transactions is measured against a three-prong test:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

*Taylor v. Phelan,* 912 F.2d 429, 432 (10th Cir.1990), *cert. denied* 498 U.S. 1068, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991).

■ Once a court has found purposeful minimum contacts with the forum, it then must determine if the exercise of jurisdiction is consistent with the notions of fair play and substantial justice. *National Gypsum,* 773

F.Supp. at 1480, quoting *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184, quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

## B. Defendant ATW

Plaintiff Blue Beacon maintains that defendant ATW committed purposeful tortious acts against Blue Beacon by interfering with the employment agreements between Blue Beacon and Overbey and other employees. Blue Beacon also states that ATW *sent* its employee Jim Haynes, a former Blue Beacon employee, to Salina, Kansas, *to obtain* the names of former or soon to be former employees so ATW could hire them away (emphasis added). Blue Beacon contends ATW then purposefully appropriated the Blue Beacon Reagan and the Blue Beacon Tip Protector for use in the ATW truck washes in Illinois and Ohio.

Blue Beacon claims ATW is guilty of unfair competition, misappropriation of trade secrets and confidential information.

■ Blue Beacon claims this court has jurisdiction over ATW under both the Kansas Long–Arm Statute and the due process provisions of the Constitution.

K.S.A. 60–308(b) provides in relevant part:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
>
> (1) Transaction of any business within this state;
>
> (2) Commission of a tortious act within this state;
>
> . . . . .
>
> (5) Entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state.

Blue Beacon argues that ATW is subject to jurisdiction because it transacted business within the state. Specifically, Blue Beacon claims Jim Haynes was ATW's agent who purposefully came into the state to solicit names of former or soon to be former employees. Personal jurisdiction may be invoked based on the actions of an individual's agent. *Source Associates, Inc. v. Suncast Group,* 709 F.Supp. 1023 (D.Kan.1989) (plaintiff established jurisdiction pursuant to K.S.A. 60–308(b)(1) by showing defendant's agent contacted plaintiff for purposes of solicitation of defendant's products).

*Source Associates* is clearly distinguishable from the present case. There, defendant's agent, who was certainly representing the defendant, actively solicited the plaintiff to buy defendant's merchandise. "... [D]efendants purposefully availed themselves of the privilege of doing business in Kansas by allowing Ken Hornung to act as their soliciting agent in the state." ·

In the present case, there is no evidence in the record that an agent of ATW purposefully availed himself of the privilege of doing business in the state. Blue Beacon claims that Jim "Haynes, as an agent of ATW, traveled to Salina, Kansas and solicited names of former, or soon to be former, employees. As an agent for ATW, he later contacted some of them for employment with ATW."

The record shows that Haynes stopped by Salina, Kansas, on his way back to Wisconsin from Texas. The record also shows he was in the state to see his ex-wife. Haynes apparently had dinner with Mike Walker, brother of Trace Walker and a friend of Haynes, who gave him the names of former or soon to be former employees of Blue Beacon. The court can find no evidence that Haynes was sent into the state of Kansas to purposefully solicit Blue Beacon employees.

This mutual, friendly and social encounter with Mike Walker, the Vice President of Blue Beacon, does not rise to the level of a business transaction as envisioned by the statute or the case law.

Blue Beacon has also alleged that ATW committed tortious acts within the state, thus invoking jurisdiction pursuant to the Kansas Long–Arm Statute. K.S.A. 60–308(b)(2).

Blue Beacon alleges that ATW's tortious acts include: misappropriation of trade secrets and other secret and confidential information; unfair competition; tortious interference with contract; and conspiracy which resulted in injury within the state and invokes this court's jurisdiction. Blue Beacon argues that the president of ATW, Patrick Behm, as a former investor in Red Baron Truck Wash, Inc., was well aware of litigation between Blue Beacon and Red Baron for misappropriation of trade secrets and other secret and confidential information.[2]

Blue Beacon claims there was a concerted attempt by ATW to raid Blue Beacon of its employees, misappropriate Blue Beacon's trade secrets and harm Blue Beacon at its corporate home in Salina, Kansas. Blue Beacon cites numerous cases which hold that a tort does not have to occur within the state for jurisdiction to be invoked or that a defendant need not be present in the state to commit a tortious act or that a tortious act committed outside the state can result in injury within the state.

For example, in *Ling v. Jan's Liquors,* 237 Kan. 629, 703 P.2d 731 (1985), the court invoked jurisdiction over a Missouri liquor establishment which had sold liquor to a minor who then entered Kansas and caused an accident. The court found that a negligent act engaged in outside the state which results in a injury within the state is the equivalent of a tortious act within the state. *Id.* 703 P.2d at 734. *Ling* is distinguishable on two counts. First, the act complained of is a purposeful action (negligent sale of liquor to a minor) by a defendant outside the state and, second, the resulting injury (an automobile accident) clearly occurred within the borders of the state.

Blue Beacon also cites *Wegerer v. First Commodity Corp. of Boston,* 744 F.2d 719, 727–728 (10th Cir.1984), for the proposition that the Kansas legislature surely envisioned

---

2. Blue Beacon commenced an action against Red Baron Truck Washes, Inc. on January 13, 1989. The parties entered into a confidential settlement of the trade secret litigation.

extending service to tortious acts occurring outside the state which cause tortious injuries within the state particularly in the environment that fosters long range communications. In *Wegerer*, Kansas residents responded to advertisements by defendant First Commodity Corporation of Boston ("FCCB") to make investments. After the Wegerers responded to the advertisements, FCCB made a series of phone calls in which plaintiffs were pressured to invest in commodity option contracts. Plaintiffs eventually succumbed to the pressure and invested their savings and money borrowed from other sources. Plaintiffs lost their investment.

In response to defendants' claim that the court did not have personal jurisdiction over them, the court held that fraud and deceit in inducement to contract were clearly torts which may cause serious injury to Kansas residents thus invoking the protection of the long-arm statute. *Id.* 744 F.2d at 727.

Again, *Wegerer* is clearly distinguishable from the case at bar. FCCB engaged in direct, purposeful and repeated acts (advertisements and phone calls) in inducing the Wegerers to invest. Blue Beacon can point to no single act, let alone a series of acts which could be deemed purposeful to establish the minimum contacts necessary to find ATW availed themselves of the privilege of doing business in the state of Kansas.

Finally, Blue Beacon cites *Volt Delta, supra,* 241 Kan. 775, 740 P.2d 1089 (1987). In *Volt Delta,* the court found that plaintiff, a non-resident New York corporation, could invoke the Kansas Long–Arm Statute to hale into court defendant non-resident employees, who had been in Kansas for a total of 43 days while in plaintiff's employ, once defendants terminated their employment in New York. *Volt Delta* appears to be an anomaly. Even if considered a proper case for exercising jurisdiction, the case at bar is distinguishable. Defendant employees in *Volt Delta* were at least working in the state for a period of time during the course of their employment. In the case before this court, there is no evidence that any ATW employee was ever in the state of Kansas conducting any business.[3]

Blue Beacon has failed to demonstrate that ATW purposefully established minimum contacts with the state. If the alleged actions occurred and harm resulted to Blue Beacon, that harm was felt in the states where ATW's truck washes are located, Illinois or Ohio. The court finds no evidence that ATW availed itself of the privilege of doing business in this state or that it purposefully established minimum contacts to meet the constitutional test of due process.

Therefore the court finds it is without jurisdiction over ATW and the motion to dismiss ATW must be granted.

### C. *Defendant Ernest Overbey*

■ As to defendant Overbey, Blue Beacon asserts claims of: breach of four separate employment contracts; breach of implied contractual and employment obligations; misappropriation of trade secrets; unfair competition and conspiracy.

Plaintiff contends Overbey had numerous contacts with the state including: the executed contracts with a Kansas corporation; salary and bonus checks paid from Salina; workers compensation coverage in the state; group health insurance premiums paid in the state; profit sharing funds in the state; direct supervision from the home office in Salina.

Using the same analysis to determine whether this court has jurisdiction over the defendant Overbey, the court answers thee question in the affirmative. The court finds that the holding of the Tenth Circuit Court of Appeals in *Equifax Services Inc., supra,* 905 F.2d 1355 (10th Cir.1990), is dispositive. In *Equifax,* defendant was employed in California by a corporation with its principal offices in Kansas. His direct supervision came from employees in Kansas. He had regular contact with employees in Kansas, by phone, by mail and electronic data devices. He was paid directly from Kansas. His employment contract stated it would be governed by Kansas law. Although he was only present in

---

**3.** The court cannot reach the conclusion that Jim Haynes' social dinner engagement with Mike Walker, a friend, amounted to a business transaction with Haynes as an agent for ATW.

Kansas for training sessions, the court found defendant had a deliberate affiliation with the forum state and concluded that purposeful affiliation with a forum state can be found in an interstate contractual relationship. *Id.* 905 F.2d at 1358–59.

Defendant Overbey's situation is remarkably similar to the defendant employee in *Equifax*. His contract was to be governed under Kansas law. His salary and benefits were processed in Kansas. He traveled to Kansas for training sessions. His supervision came from the Kansas offices.

Because Equifax is dispositive, the motion to dismiss by Overbey is denied.

**IT IS THEREFORE BY THE COURT ORDERED** that the motion to dismiss (Doc. 10) as to American Truck Washes is granted.

**IT IS FURTHER ORDERED** that the motion to dismiss (Doc. 10) as to Overbey is denied.

**IT IS FURTHER ORDERED** that defendants' motion to strike (Doc. 20) is denied as moot.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss plaintiffs' amended complaint (Doc. 29) is denied as moot.

**IT IS FURTHER ORDERED** that plaintiffs' motion to supplement or amend plaintiffs' response to defendants' motion to dismiss amended complaint (Doc. 88) is denied as moot.