EQUIFAX SERVICES, INC., d/b/a Equifax Commercial Specialists f/k/a White & White Inspection and Audit Service, Inc., Plaintiff–Appellee,

v.

Steven A. HITZ, Defendant–Appellant.

No. 89–3069.

United States Court of Appeals, Tenth Circuit.

June 4, 1990.

Robert Vogel (Kris Arnold on the brief) of Evans & Mullinix, Kansas City, Kan., for defendant-appellant.

W. Robert King of Morris & Larson, Overland Park, Kan., for plaintiff-appellee.

Before LOGAN, BARRETT, and EBEL, Circuit Judges.

LOGAN, Circuit Judge.

In this diversity action, defendant Steven A. Hitz appeals under 28 U.S.C. § 1292(a)

from a preliminary injunction issued in favor of plaintiff Equifax Services, Inc. (Equifax), prohibiting Hitz from violating covenants not to compete with his former employer, White & White Inspection and Audit Service, Inc. (White & White), plaintiff's predecessor. Defendant also challenges the district court's exercise of personal jurisdiction over him, the amount of the bond the court required plaintiff to post, and the denial of defendant's motion to transfer venue. We affirm.

White & White was a Missouri corporation, with its principal offices in Kansas, which provided survey and audit services for insurance companies. Defendant was employed by White & White as a branch manager in southern California over the course of several years. In 1988, purchasers of the stock of White & White merged the corporation with Equifax, a Georgia corporation. Equifax conducts the former business of White & White through Equifax Commercial Specialists, an unincorporated division with its principal offices in Kansas. Stating that he objected to the merger, defendant resigned to become the president and a director of Golden Coast Investigative Services, a competing enterprise organized shortly before defendant's resignation. Defendant's wife owns ninety-five percent of Golden Coast.

Equifax brought suit in a Kansas state court for damages and injunctive relief, alleging that defendant was violating covenants in his employment contract with White & White prohibiting him from competing in California, either alone or in concert with other former White & White personnel, for a period of two years after his departure, and prohibiting him from using confidential information obtained as a White & White employee. Defendant removed the case to the United States District Court for the District of Kansas, where the district court, after a hearing, granted Equifax a preliminary injunction that prohibited defendant from violating the restrictive covenants in his employment contract, required Equifax to post only a $10,000 bond, and denied defendant's motion for a transfer of venue to the Central District of California. Defendant challenges each of these actions on appeal, as well as the district court's exercise of personal jurisdiction over him.

## I

After the hearing on the preliminary injunction, the district court made findings of fact from which it concluded that it had personal jurisdiction over defendant. The material facts are not in dispute, therefore, we review the district court's conclusion de novo. *See Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).

## A

In a diversity case such as this one, the district court's exercise of personal jurisdiction must comport with the standards of both the forum state's long-arm statute and the United States Constitution. *Id.* at 1416; *see* Fed.R.Civ.P. 4(e). Here, these inquiries are essentially the same, because "[t]he Kansas long arm statute [Kan.Stat. Ann. § 60–308(b) ] is liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fourteenth Amendment to the U.S. Constitution." *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 740 P.2d 1089, 1092 (1987).

■ For purposes of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)), and "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there," *id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490

(1980)). When specific jurisdiction[1] is based upon a contractual dispute, we must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... in determining whether the defendant purposefully established minimum contacts with the forum." *Id.* 471 U.S. at 479, 105 S.Ct. at 2185. "[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473, 105 S.Ct. at 2182 (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)). And if a defendant's actions cause foreseeable injuries in another state, it is, "at the very least, presumptively reasonable for [the defendant] to be called to account there for such injuries." *Id.* 471 U.S. at 480, 105 S.Ct. at 2186.

■ Defendant's contacts with Kansas arise mainly from the fact that he was employed by a corporation with its principal offices in Kansas.[2] The district court, in a brief analysis, concluded that jurisdiction over defendant is proper because "defendant chose to be employed by a corporation with its principal place of business in Kansas." I R. tab 18, at 6. Because a contract with an out-of-state party cannot alone justify personal jurisdiction in the foreign state, *Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185, this statement is too sweeping. But we believe that the nature of defendant's relationship with his Kansas employer supports the district court's exercise of personal jurisdiction over defendant in Kansas in this dispute arising out of that relationship.

Although defendant worked solely in southern California, as a branch manager in charge of White & White offices there, his only direct supervision came from White & White employees in Kansas. Defendant had regular contact with White & White employees in Kansas, both by telephone, mail, and through electronic data communications. Defendant's customers were invoiced from and made payment directly to White & White in Kansas. Defendant and his personnel were paid directly by White & White from Kansas, and that company's Kansas office reimbursed expenses for defendant's offices and provided those offices with necessary materials and supplies. Defendant also negotiated the terms of his employment contract directly with White & White's president, a contract which paid him $120,000 to $140,000 per year over his last two years of employment.

There were no intermediaries between defendant and his employer in Kansas. *Cf. Corporate Investment Business Brokers v. Melcher,* 824 F.2d 786, 789 n. 4 (9th Cir.1987) (lack of intermediary between resident franchisor and nonresident franchisee supported jurisdiction over franchisee). Indeed, defendant admitted at the hearing that he knew that any disputes regarding his employment contract would originate in Kansas. R.Supp. 1, at 52. *See also FMC Corp. v. Varonos,* 892 F.2d 1308, 1313–14 (7th Cir.1990) (jurisdiction over nonresident employee in suit by resident employer); *Union Carbide Corp. v. UGI Corp.,* 731 F.2d 1186, 1190 (5th Cir.1984) (same); *Inter–Collegiate Press, Inc. v. Myers,* 519 F.Supp. 765, 768–69 (D.Kan.1981) (same; defendant employee "dealt directly with the home office rather than through a regional supervisor"); *cf. Pittsburgh Termi-*

1. This is a case of specific jurisdiction because this litigation arises out of or is related to the defendant's contacts with his Kansas employer. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 1872 & n. 8, 80 L.Ed.2d 404 (1984).

2. For diversity purposes, this makes White & White a citizen of Kansas. 28 U.S.C. § 1332(c). We recognize that White & White has merged into Equifax and now operates as an unincorporated division with its principal offices in Kan-

sas. *See Brunswick Corp. v. Jones,* 784 F.2d 271, 275 n. 3 (7th Cir.1986) (for diversity purposes, unincorporated division's citizenship is same as corporation of which it is a part). There is still diversity, of course, because Equifax is a Georgia corporation. And for purposes of personal jurisdiction, we attach no significance to the mere change in corporate form. Hitz's contacts with Kansas and Kansas' interests in this dispute are essentially unchanged by the merger.

*nal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 526–29 (4th Cir.1987) (jurisdiction over nonresident director in shareholder derivative suit on behalf of resident corporation); *T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310, 314–15 (9th Cir.1987) (jurisdiction over nonresident accountant in suit by resident client).

Defendant's only significant physical presence in Kansas in connection with his employment was to attend a training session when he was still an independent contractor working for White & White, and when he was summoned to White & White's Kansas offices for a reprimand shortly before he resigned. That defendant's employment duties were carried out exclusively in California, however, cannot defeat jurisdiction. *See Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. "[T]he relationship among the defendant, the forum, and the litigation ... [is] the central concern of the inquiry into personal jurisdiction." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). The underlying dispute arises from defendant's relationship with his employer, and that relationship was a California–Kansas one. *Cf. Melcher*, 824 F.2d at 789–90 (nonresident defendant-franchisee's forum related activity was its relationship with the resident plaintiff-franchisor). Defendant's two trips to Kansas merely reinforce the interstate character of that relationship. And the fact that defendant's employment contract provided it would be governed by Kansas law also reinforces defendant's "deliberate affiliation with the forum State and the reasonable forseeability of possible litigation there." *Burger King*, 471 U.S. at 482, 105 S.Ct. at 2187.

Defendant's brief alleges that jurisdiction cannot be predicated upon his contractual relationship with his employer because of White & White's "overweening bargaining power," citing *Burger King*, 471 U.S. at 486, 105 S.Ct. at 2189. But defendant's claim of overweening bargaining power is not supported by the record. Defendant was a highly compensated management employee. That his attempted negotiations on his employment contract were fruitless does not mean that his free will was over-

come. *See id.* at 484–85, 105 S.Ct. at 2188–89. "Absent compelling considerations, a defendant who has purposefully derived commercial benefit from his affiliations in a forum may not defeat jurisdiction there simply because of his adversary's greater net wealth." *Id.* at 483 n. 25, 105 S.Ct. at 2188 n. 25 (citation omitted).

■ Defendant's primary argument for lack of jurisdiction is that none of his contacts with Kansas were purposeful, because they were required by his employer. But when forum contacts are a natural result of a contractual relationship, it indicates purposeful affiliation with the forum through an interstate contractual relationship. *See Burger King*, 471 U.S. at 479–81, 105 S.Ct. at 2185–87; *FMC*, 892 F.2d at 1313–14; *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 368 (2d Cir.1986).

### B

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160); *see Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–16, 107 S.Ct. 1026, 1033–35, 94 L.Ed.2d 92 (1987). But "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184. In this regard, we will consider " 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' " *Id.* (quoting

*World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564).

Defendant's assertion that litigation in Kansas is overly burdensome has already been considered and rejected by the district court's denial of defendant's motion to transfer venue. *See Burger King,* 471 U.S. at 483–84, 105 S.Ct. at 2187–88. And the state of Kansas has "a legitimate interest in holding [defendant] answerable on a claim related to" his contacts with that state. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 776, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984).

"[T]he process of resolving potentially conflicting 'fundamental social policies' can usually be accommodated through choice-of-law rules rather than through outright preclusion of jurisdiction in one forum." *Burger King,* 471 U.S. at 483 n. 26, 105 S.Ct. at 2188 n. 26 (citation omitted). As we discuss below, the Kansas choice of law rules applicable in this case appear to be mechanical, not balancing the policies of the interested states. Nevertheless, the parties themselves have agreed upon the proper balance between the competing state policies by choosing Kansas law to govern their contract.

## II

■ There are four prerequisites for the grant of a preliminary injunction:

"(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest."

*Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980). We will reverse the district court's grant of a preliminary injunction only for abuse of discretion. *Id.*

**3.** It is not clear that California law would invalidate the restrictive covenants at issue, insofar as enforcement is attempted here. See discussions of California law in *Medtronic, Inc. v. Gibbons,*

## A

■ On the issue of likelihood of success on the merits, defendant argues that the district court erred in applying Kansas law to determine the validity of the covenant not to compete. Defendant contends that the covenant is unenforceable in California by virtue of Cal.Bus. & Prof.Code § 16600; he argues that the district court should have disregarded the contractual choice of Kansas law and applied California law because, as the employee's state of residence and performance under the contract, California has a materially greater interest in applying its law to invalidate the covenant not to compete, citing *Restatement (Second) of Conflict of Laws* § 187(2)(b) (1971 & Supp.1989).

A diversity court must apply the choice-of-law rules of the forum state, *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), including the forum state's rule as to whether a contractual choice-of-law provision is enforceable, *see Interfirst Bank Clifton v. Fernandez,* 853 F.2d 292, 294 (5th Cir.1988). In a case in which there was no contractual choice-of-law clause, the Kansas Supreme Court refused to follow the *Second Restatement*'s balancing of the competing policies of interested states and opted to adhere to the *lex loci contractus* rule when it reflected Kansas public policy. *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.,* 245 Kan. 258, 777 P.2d 1259, 1267–70 (1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990); *see also Missouri Pac. R.R. Co. v. Kansas Gas & Elec. Co.,* 862 F.2d 796, 798 n. 1 (10th Cir.1988). Although we could find no Kansas cases on point, we believe the Kansas courts would likewise refuse to weigh any conflict between Kansas' and California's laws and policies, if indeed there is conflict between them,[3] and would apply Kansas law in this litigation as agreed to by the parties in their contract.

684 F.2d 565, 568 (8th Cir.1982); and *Hollingsworth Solderless Terminal Co. v. Turley,* 622 F.2d 1324, 1329–40 (9th Cir.1980).

Although the covenant at issue covers a broad geographic region, Equifax apparently is not attempting to enforce it to the full extent of its language. In similar circumstances, the Kansas Supreme Court has upheld the right to enforce an overly broad covenant to the extent reasonably necessary to carry out the protective intent of the parties. *Foltz v. Struxness*, 168 Kan. 714, 215 P.2d 133, 137–38 (1950). We think it likely would do so in the circumstances before us.

■ Defendant challenges Equifax' likelihood of success on the merits on a second ground. Defendant's employment contract with White & White provided that "[t]he duties and obligations of the [defendant] under this agreement shall inure [to] the benefit of the successors and assigns of White & White." I R. tab 15, exhibit A, at 4 ¶ 10(f). Nonetheless, defendant argues that Equifax cannot enforce the covenant not to compete, as White & White's successor, because personal service contracts are not assignable. This argument is flawed because it assumes a contract is only assignable in toto. A contract consists of a bundle of rights and duties, and whether rights are assignable or duties delegable depends on the particular rights and duties at issue. *See generally Restatement (Second) of Contracts* § 316 comment c (1981). Although an employee's duty to perform under an employment contract generally is not delegable, *see id.* § 318(2) & comment c, illustration 5, the right to enforce a covenant not to compete generally is assignable in connection with the sale of a business, *see id.* § 317 comment d, illustration 6. In the case of a merger, as here, the surviving corporation automatically succeeds to the rights of the merged corporations to enforce employees' covenants not to compete. *See generally Alexander & Alexander, Inc. v. Koelz*, 722 S.W.2d 311, 313 (Mo.Ct. App.1986); 6 W. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 2579.3, at 739 (J. Reinholtz & M. Wasiunec rev. ed. 1989).

## B

■ Defendant next argues that the district court erred in concluding that Equifax was being irreparably harmed, that the only harm Equifax proffered was a loss of customers, and that this is readily compensable through money damages. There is language in a recent Kansas Court of Appeals case, *Wichita Wire, Inc. v. Lenox*, 11 Kan.App.2d 459, 726 P.2d 287, 291–92 (Ct. App.1986), in which there was no noncompete agreement, suggesting that a loss of established business is insufficient to establish irreparable harm. We are not fully satisfied that the Kansas Supreme Court would apply that rule in a case like the one before us. In any event, the doctrine of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), does not apply to preliminary injunction standards, 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2943, at 390 (1973), and we believe that whether money damages will constitute an adequate remedy requires consideration of the difficulty of proving damages with any reasonable degree of certainty. *Restatement (Second) of Contracts* § 360(a) & comment b, at 172 ("The breach of a covenant not to compete may cause the loss of customers of an unascertainable number or importance."); *see also Foundry Servs., Inc. v. Beneflux Corp.*, 206 F.2d 214, 216 (2d Cir.1953) (L. Hand, J., concurring). The district court credited testimony that "the insurance investigation business is based on personal contacts and a knowledge of the special needs and requirements of customers," I R. tab 18, at 11, a fact which complicates any damage estimate, *see Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 566, 569 (8th Cir. 1982). The district court found irreparable harm based upon "evidence suggest[ing] that it is impossible to precisely calculate the amount of damage [plaintiff] will suffer," I R. tab 18, at 12. This finding is not clearly erroneous.

## C

The defendant makes further challenges to the district court's assessment of the requisite elements for a preliminary injunction and the evidence bearing upon them, but our review of the record reveals no

abuse of discretion. Therefore, we affirm the grant of the preliminary injunction.

### III

■ Defendant contends that the district court abused its discretion in requiring Equifax to post only $10,000 in security under Fed.R.Civ.P. 65(c). The rule requires a bond to secure damages from a wrongful injunction only "in such sum as the court deems proper," *id.*, therefore, "the trial judge has wide discretion in the matter of requiring security," *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir.1964). At the hearing on the preliminary injunction, defendant presented no evidence on the extent to which he would be harmed by an injunction. Therefore, we will not speculate that $10,000 is insufficient.

### IV

Finally, defendant challenges the district court's failure to grant his motion for a transfer of venue to the United States District Court for the Central District of California. "It is entirely settled that an order granting or denying a motion to transfer under 28 U.S.C.A. § 1404(a) is interlocutory and not immediately appealable under 28 U.S.C.A. § 1291." 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3855, at 472 & n. 1 (2d ed. 1986 & Supp.1990) (citing cases). Even if we have discretion to review such an order in the course of a review of a preliminary injunction, *see, e.g., Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 760 F.2d 312, 314–15 (D.C.Cir.1985), we see no compelling reasons to do so in this case, *see Howard Elec. & Mechanical Co. v. Frank Briscoe Co.*, 754 F.2d 847, 850–51 (9th Cir. 1985).

AFFIRMED.