**CUSTOM ENERGY, LLC, Plaintiff,**

v.

**The CONSERVATION GROUP,
a/k/a Wilson EC & M
Corp., Defendant.**

**No. Civ.A.992306GTV.**

United States District Court,
D. Kansas.

March 21, 2000.

Gregory V. Blume, Overland Park, KS, for Custom Energy LLC, plaintiff.

Thomas A. Hamill, Benjamin S. Tschudy, Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., Overland Park, KS, for Conservation Group, The aka Wilson EC & M Corp., defendant.

## MEMORANDUM AND ORDER

VanBEBBER, District Judge.

Plaintiff originally filed this action in Johnson County District Court against defendant seeking a declaratory judgment terminating the parties' Business Partner Agreement. On July 8, 1999, defendant removed the action pursuant to 28 U.S.C. § 1441(a) because this court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332. The case is now before the court on defendant's motion to dismiss, or in the alternative, to change venue (Doc. 6) pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(6), and 28 U.S.C. §§ 1404(a) and 1406(a). The court held a hearing on January 31, 2000, at which time the court granted the parties additional time to supplement their briefing. Because the court finds that it lacks personal jurisdiction over defendant, defendant's motion to dismiss is granted.

### I. BURDEN OF PROOF

In a diversity action, the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. *See Behagen v. Amateur Basketball Ass'n.*, 744 F.2d 731, 733 (10th Cir. 1984). However, the burden of proof varies depending upon the procedure employed to determine the issue. If a motion to dismiss for lack of personal jurisdiction is submitted prior to trial on the basis of affidavits and other written materials, plaintiff is initially required only to make a prima facie showing to avoid dismissal. *See F.D.I.C. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992). To be sufficient to put the contested facts in issue, affidavits submitted in support of or in opposition to motions to dismiss for lack of jurisdiction must comply with the requirements of Fed.R.Civ.P. 56(e); i.e., they must be made on personal knowledge, set forth such facts as would be admissible as evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. *See id.* at 175 n. 6. If the parties submit conflicting affidavits, the court must resolve all factual disputes in the plaintiff's favor. *See Marketing Group, Inc. v. Success Dev. Int'l. Inc.*, 41 F.Supp.2d 1241, 1242 (D.Kan.1999).

### II. FACTUAL BACKGROUND

Plaintiff is a Kansas corporation with its principal place of business in Lenexa, Kansas. Plaintiff is the successor in interest in all respects relevant to this case to Power System Solutions; viewing the entities as one and the same, the court collectively refers to both as plaintiff. Defendant is a joint venture, whose venturers are all citizens of New York.

In 1993, plaintiff opened an office in New Jersey. That same year, plaintiff was approached by Tim Brock, who later formed defendant. Brock and Tim Clemons, the President and CEO of plaintiff, met in plaintiff's New Jersey office to discuss forming an Energy Service Company in New England. Energy Service Companies sign energy savings contracts—called Guaranteed Savings Energy Construction Agreements—with customers to install new lighting systems, air conditioning systems, heating systems, temperature control systems, and other energy conservation measures that reduce utility bills and

maintenance costs required to maintain a facility. The contracts finance the projects and guarantee that the payments for the improvements will be made from the energy and maintenance savings. If the guarantees are not verified, the Energy Service Company is required to pay the difference for the customer.

On November 12, 1994, the parties entered into a Business Partner Agreement with the express intent to market and implement energy savings programs to school districts. From then on, the parties implemented such energy savings programs primarily in New York state.[1] In early 1996, the parties held a meeting at plaintiff's Overland Park, Kansas office to discuss possible solutions to various problems that had arisen between the parties. On September 17, 1996, the parties entered into a second agreement that enumerated the final list of projects to be undertaken by the parties.

### III.  DISCUSSION

In a suit in federal court based on diversity of citizenship, the law of the forum state determines personal jurisdiction over a non-resident defendant. *See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.,* 17 F.3d 1302, 1304 (10th Cir.1994). In Kansas, a two-step analysis is used to determine whether a court has personal jurisdiction over a defendant. First, the court must determine whether it has jurisdiction under the Kansas long-arm statute. *See* K.S.A. § 60–308(b). The Kansas long-arm statute provides that a non-resident defendant submits to the jurisdiction of the state of Kansas by, inter alia, transacting any business within the state or entering into a contract with a resident of Kansas to be performed in part or in whole in Kansas. *See* K.S.A. § 60–308(b)(1) and (5). Second, the court must determine whether the exercise of jurisdiction comports with the constitutional guarantee of due process. *See Federated Rural Elec.,* 17 F.3d at 1304–05. "In Kansas,

these inquiries are for all intents and purposes the same because the Kansas long-arm statute, K.S.A. § 60–308(b), has been liberally construed by the Kansas courts to assert personal jurisdiction to the full extent permitted by the due process clause." *Marketing Group,* 41 F.Supp.2d at 1243 (citation omitted); *see also Equifax Servs., Inc. v. Hitz,* 905 F.2d 1355, 1357 (10th Cir.1990). The court, therefore, proceeds directly to the constitutional issue.

Due process requires that a defendant have certain minimum contacts with the forum state sufficient to guarantee that the assertion of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The sufficiency of the contacts depends on the type of personal jurisdiction the forum seeks to assert—specific jurisdiction or general jurisdiction. *See Kuenzle v. HTM Sport–Und Freizeitgerate ·AG,* 102 F.3d 453, 455 (10th Cir.1996). Defendant argues that because plaintiff has failed to allege any facts that show defendant had continuous and systematic contacts with Kansas, the court must only evaluate whether it has specific jurisdiction over defendant. The court agrees and focuses on the specific jurisdiction issue.

"For purposes of personal jurisdiction, the constitutional touchstone remains whether the defendant purposefully established minimum contacts in the forum State, and the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Equifax Servs.,* 905 F.2d at 1357 (citations omitted). "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant . . . [the minimum contacts requirement] is satisfied if the defendant has 'purposely directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to'

---

1.  Plaintiff has a branch office in New York.

those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Id.* at 475, 105 S.Ct. 2174 (citations omitted).

The Supreme Court has rejected the notion that an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum. *See id.* at 478, 105 S.Ct. 2174. Instead, the Court has applied a highly realistic approach that recognizes that a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id.* (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316, 63 S.Ct. 602, 87 L.Ed. 777 (1943)). Accordingly, parties' prior negotiations, contemplated future consequences, actual course of dealing, and contract terms must be evaluated to determine whether a defendant purposefully established minimum contacts within the forum. *See id.*

■ Plaintiff contends that this court has personal jurisdiction over defendant because plaintiff is performing the contract—including maintenance management, measuring and verification, and energy guarantee reporting—in its Kansas office. The court, however, is unconvinced that this fact establishes the requisite minimum contacts with Kansas. While the court recognizes that plaintiff is actually performing at least part of the Business Partner Agreement in Kansas, the record

is completely devoid of any evidence that this is what the parties contemplated at the time of contracting. This distinction is a crucial one. The court does not believe that the fact that plaintiff is actually performing the contract in Kansas is sufficient alone to comport with the constitutional guarantee of due process. The court finds that the record lacks any evidence that the parties contemplated the future consequences of the contract to be performed in Kansas, as well as any other evidence that defendant purposefully established minimum contacts with Kansas.[2] The court cannot conclude that defendant's conduct and connection with Kansas are such that it should have reasonably anticipated being haled into court in this State.

■ Plaintiff also contends that the parties' 1996 meeting in Kansas is sufficient to establish personal jurisdiction over defendant. The issue with respect to specific jurisdiction is whether "the defendant has 'purposely directed' [its] activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174 (citations omitted). This litigation arises out of the parties' 1994 Business Partner Agreement; in fact, plaintiff's complaint seeks a declaratory judgment terminating the Business Partner Agreement and plaintiff's obligations thereunder.

Plaintiff likens the instant case to *Marketing Group Inc. v. Success Dev. Int'l. Inc.*, 41 F.Supp.2d 1241 (D.Kan.1999). Contrary to plaintiff's contention, however, this case is quite distinguishable from *Marketing Group*. Specifically absent from this case is any evidence that defendant purposefully solicited plaintiff in Kansas,[3] or that defendant should have known

---

**2.** Tim Clemons states in his affidavit, "Most of the interaction with [defendant] in 1995 was by hundreds of phone calls, faxes, and mail to our Kansas staff who were working on projects." The court assumes from the context of the affidavit that the Kansas staff were working on projects in New York. The court does

not find that defendant's conduct and connection with Kansas are such that it should have reasonably anticipated being haled into court here.

**3.** Plaintiff's argument that it was solicited at the Overland Park, Kansas office by Tim

that the contract was to be performed at least in part in Kansas. In *Marketing Group,* contract performance mandated that the plaintiff utilize its computers, equipment, and reference materials located in its Kansas office. The parties' Business Partner Agreement in the instant case does not express a similar mandate, nor does the court find any evidence that the parties contemplated performance in Kansas. In sum, the court concludes that plaintiff has failed to make even a prima facie showing that the court has personal jurisdiction over defendant.

IT IS, THEREFORE, ORDERED that defendant's motion to dismiss (Doc. 6) is granted.

Copies of this order shall be mailed to counsel of record for the parties.

The case is closed.

**IT IS SO ORDERED.**

Brock is completely unsupported by the accompanying affidavits.