THERMAL COMPONENTS COMPANY, Plaintiff,

v.

Steve GRIFFITH, Mike Redus, Joshua Blakey, Bill Wilson, and Thermotech, Inc., Defendants.

No. 00–2103–JWL.

United States District Court, D. Kansas.

April 17, 2000.

Steven D. Ruse, Shughart, Thomson & Kilroy, Overland Park, KS, for plaintiff.

Steven F. Coronado, Sherman, Taff & Bangert, P.C., Kansas City, KS, for defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Thermal Components Company ("Thermal Components") filed this action against defendants Steve Griffith, Mike Redus, Joshua Blakey, Bill Wilson, and Thermotech, Inc. ("Thermotech") in the District Court of Johnson County, Kansas, alleging various state law causes of action including tortious interference with contract, breach of fiduciary duty, misappropriation of trade secrets, unjust enrichment, conversion, and replevin. Defendants removed the action to this court on the basis of diversity jurisdiction. Presently before the court is defendants' motion to dismiss for lack of personal jurisdiction, or, alternatively, for transfer of venue to the United States District Court for the Western District of Missouri, Southern Division and defendant Thermotech's separate motion to dismiss for insufficient service of process (doc. 4). For the reasons set forth below, defendants' motion is denied in its entirety.

### I. Background

Plaintiff Thermal Components is a corporation organized under the law of Kansas with its principal place business in Lenexa, Kansas. Defendants Griffith, Redus, Blakey, and Wilson, all former employees of plaintiff Thermal Components, are residents of Missouri. Defendant Thermotech is a Missouri corporation with its principal place of business in Springfield, Missouri.

After entering into a written employment contract[1] with plaintiff in December 1989, defendant Griffith worked in plaintiff's Kansas office until June 1992, at which time he was assigned to manage plaintiff's Springfield, Missouri office. Following his transfer to the Springfield office, defendant Griffith traveled into Kansas, at plaintiff's behest, an average of once per year. Defendant Redus was hired by plaintiff in September 1992, and after completing his job training in the state of Kansas, began working out of plaintiff's Springfield office. Redus also occasionally traveled to Kansas at plaintiff's direction. Defendants Wilson and Blakey were hired to work in plaintiff's Springfield location in 1993 and 1998, respectively. Like Redus, defendant Blakey completed two weeks of job training in the state of Kansas. During his tenure as a Thermal Components employee, defendant Wilson traveled to Kansas at plaintiff's request on at least four occasions. While working for plaintiff from the Springfield office location, each of the individual defendants, as part of their job duties, maintained contact with plaintiff's Kansas office via facsimile, mail and telephonic communications. Defendants Griffith and Redus' contacts with plaintiff's Kansas office were fairly frequent—i.e., several times a week; defendants Blakey and Wilson's also communicated with their employer's Kansas office, albeit less often than their codefendants. All payroll and employee benefit information with respect to Thermal Components' employees is maintained and processed in Thermal Components' Kansas office.

According to plaintiff's complaint, defendants Griffith, Redus, Wilson, and Blakey resigned from Thermal Components in early January 2000. Following their respective resignations from plaintiff's employ, the individual defendants then became affiliated in various professional capacities with defendant Thermotech, a

---

**1.** None of the other individual defendants executed written employment agreements with plaintiff Thermal Components.

corporation formed under Missouri law on January 4, 2000.

On February 17, 2000, plaintiff Thermal Components filed an action in the District Court of Johnson County, Kansas, seeking damages and injunctive relief arising from defendants' alleged breach of fiduciary duty of loyalty, tortious interference with contractual relations and business expectancies, misappropriation of trade secrets, and conversion of plaintiff's property. On March 1, 2000, defendants removed the action to this court on the basis of diversity jurisdiction. Defendants move to dismiss the action for lack of personal jurisdiction and improper venue; alternatively, defendants request the court to transfer the case to the United States District Court for the Western District of Missouri, Southern Division. Defendant Thermotech separately moves to dismiss on the basis of insufficient service of process.

## II. Personal Jurisdiction

■■■ A plaintiff opposing a motion to dismiss for lack of personal jurisdiction bears the burden of establishing that the exercise of personal jurisdiction over the defendant is proper. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir.1996). If the motion to dismiss is submitted prior to trial on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing to avoid dismissal for lack of personal jurisdiction. *Id.* Although the plaintiff will be required to prove the factual basis for jurisdiction by a preponderance of the evidence at trial, on a pre-trial motion to dismiss, all factual disputes are resolved in favor of the plaintiff. *Id.* If the plaintiff makes the required prima facie showing that personal jurisdiction exists, "a defendant must present a compelling case demonstrating 'that the presence of

some other considerations would render jurisdiction unreasonable.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir.1998) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

There is no dispute that this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332: the parties are citizens of different states, and the amount in controversy exceeds $75,000. In diversity actions, personal jurisdiction over a nonresident defendant is determined by the law of the forum state. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.,* 17 F.3d 1302, 1304 (10th Cir. 1994). To exercise personal jurisdiction over a nonresident defendant, the court must ensure that "the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state," and that the due process requirements of the Constitution are satisfied. *Id.* at 1304–05. The Kansas long arm statute has been interpreted by Kansas courts "to allow jurisdiction to the full extent permitted by due process," such that these inquiries are, for all practical purposes, duplicative. *Id.* at 1305.[2]

### A. The Kansas Long–Arm Statute

■■■ Plaintiff asserts that jurisdiction over individual defendants Griffith, Redus, Blakey, and Wilson is proper under K.S.A. § 60–308(b)(2), the "tortious act" provision of the Kansas long-arm statute. Pursuant to that subsection of the Kansas long-arm statute, a party submits to the jurisdiction of courts in this state if that party, or its agent or instrumentality, commits "a tortious act within this state[.]" K.S.A. § 60–308(b)(2). "[A]n injury which occurs in Kansas as a result of a tortious act outside the state amounts to a 'tortious act within

---

2. Indeed, due to the broad interpretation accorded the Kansas long-arm statute by Kansas courts, the Tenth Circuit has explained that "[b]ecause the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, we

proceed directly to the constitutional issue." *OMI Holdings,* 149 F.3d at 1091 (quoting *Federated Rural,* 17 F.3d at 1305). Nevertheless, the court will consider whether defendants' conduct falls within the purview of the Kansas long-arm statute.

the state,' thus falling within subsection (2) of the long-arm statute." *Taylor v. Phelan,* 912 F.2d 429, 432 (10th Cir.1990) (citing *Ling v. Jan's Liquors,* 237 Kan. 629, 633, 703 P.2d 731, 734 (1985)). Thus, if the injury attributable to the tortious activity is felt by a Kansas complainant, the nonresident defendant's physical presence within the forum state is not required for purposes of K.S.A. § 60–308(b)(2). *See Ling,* 237 Kan. at 633, 703 P.2d at 734; *see also Ammon v. Kaplow,* 468 F.Supp. 1304, 1309 (D.Kan.1979) (New York defendants' allegedly false advertisement in a national publication causing financial injury to Kansas resident satisfies tortious act provision); *J.E.M. Corp. v. McClellan,* 462 F.Supp. 1246, 1248–54 (D.Kan.1978) (Illinois defendant's phone call to Kansas resident during which fraudulent representations were made falls within K.S.A. § 60–308(b)(2)).

Additionally, plaintiff contends that jurisdiction may be exercised over corporate defendant Thermotech pursuant to the "agent or instrumentality" provision of the Kansas long-arm statute. The "agent or instrumentality" language of K.S.A. § 60–308(b) has been broadly interpreted to encompass nonresident defendants who (1) control or direct the instrumentality's acts from which the claim arises, or (2) "purposefully seek[ ] and foreseeably benefit[ ] from [an] active relationship with another entity that has transacted business in the forum that gives rise to [the] claim." *Energy Reserves Group, Inc. v. Superior Oil Co.,* 460 F.Supp. 483, 514 (D.Kan.1978) (subjecting a nonresident subsidiary corporation to the long-arm statute because it benefitted from its Kansas parent corporation's contract negotiations); *accord Triple A Partnership v. MPL Communications, Inc.,* 629 F.Supp. 1520, 1523 (D.Kan.1986)

(subjecting a nonresident to the long-arm statute because of the in-state activities of independent licensees who transacted business that inured to the defendant's benefit).

Plaintiff claims that the defendants' tortious activities, including misappropriation of trade secrets, interference with business expectancies, breach of fiduciary duty and conversion, subject them to jurisdiction under the tortious act provision of the Kansas long-arm statute. The court agrees. Indeed, the injuries for which plaintiff seeks redress, allegedly caused by the defendants' conduct, occurred in Kansas for purposes of the "tortious act" provision of the long-arm statute. *See Dazey Corp. v. Wolfman,* 948 F.Supp. 969, 973 (D.Kan. 1996) (financial loss due to defendant's fraudulent conduct occurred in Kansas); *Corinthian Mortgage Corp. v. First Sec. Mortgage Co.,* 716 F.Supp. 527, 529 (D.Kan.1989) (alleged financial injury caused by defendant's misrepresentations suffered at corporation's principal place of business in Kansas). Accordingly, the court concludes that it is proper to invoke jurisdiction over defendants pursuant to K.S.A. § 60–308(b)(2).[3]

## B. Due Process

Having determined that defendants' conduct falls within the reach of the Kansas long-arm statute, the court turns next to the issue of whether the exercise of personal jurisdiction comports with due process requirements. "The 'minimum contacts' standard may be met in one of two ways" *OMI Holdings,* 149 F.3d at 1090. First, a court may exercise specific jurisdiction over nonresident defendants where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries

---

**3.** Additionally, plaintiff contends that defendants' conduct falls within the "transacting business" and "entering into a contract with a Kansas resident" provisions of the Kansas long-arm statute, § 60–308(b)(1) and (5), respectively. Because the court concludes that defendants' commission of the tortious activi-

ties alleged by plaintiff occurred within the state of Kansas, and thus that jurisdiction is proper under the tortious act provision of § 60–308(b), the court need not address whether defendants' conduct also implicates subsections (b)(1) and (b)(5).

that 'arise out of or relate to' those activities." *Id.* at 1090–91 (quoting *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174). Where no nexus is alleged to exist between the defendant's forum-related activities and the injury sustained, a court may nevertheless exercise "general" jurisdiction over a nonresident defendant whose contacts with the forum state are so pervasive that personal jurisdiction is conferred by the "continuous and systematic" nature of the defendant's in-state activities. *Id.* Here, plaintiff does not allege that defendants' contacts with the state of Kansas are sufficiently "continuous and systematic" such that general jurisdiction is proper in this suit. Accordingly, the court addresses the issue of specific jurisdiction only.

■ Whether a court may exercise specific jurisdiction over a nonresident defendant is governed by a two-fold inquiry: first, the court must determine whether sufficient minimum contacts between the nonresident defendant and the forum state exist, and if so, the court must then assess whether the exercise of personal jurisdiction is reasonable under the facts and circumstances of the case. *OMI Holdings,* 149 F.3d at 1091. The two components of the due process analysis are conversely related: "the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *OMI Holdings,* 149 F.3d at 1092 (quoting *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 210 (1st Cir.1994)).

### 1. Minimum Contacts

■ Due process "minimum contacts" are established only where the nonresident defendant has "purposefully avail[ed] itself of the privilege of conducting activities in the forum State." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Such "purposeful availment" of the forum's benefits is required so that a nonresident defendant will

not be forced to defend itself in a forum with which its contacts are only "random, fortuitous, or attenuated." *Id.* Indeed, due process concerns allow jurisdiction only where the defendant has engaged in activities within the forum such that it may "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Where a nonresident "defendant's actions cause foreseeable injuries in another state, it is, 'at the very least, presumptively reasonable for [the defendant] to be called to account there for such injuries.' " *Equifax Servs., Inc. v. Hitz,* 905 F.2d 1355, 1358 (10th Cir.1990) (quoting *Burger King,* 471 U.S. at 480, 105 S.Ct. 2174).

The court concludes that, taking the facts alleged by plaintiff as true, plaintiff has made the required prima facie showing that the individual defendants' contacts with this state are sufficient to subject them to personal jurisdiction in Kansas. By misappropriating the trade secrets to which the individual defendants became privy only as a result of their employment by the plaintiff, and by using that information to interfere with Thermal Components' pre-existing and future contractual relations, defendants' purposeful tortious conduct toward, as well as the individual defendants' previous employment relationship with, a Kansas resident establishes the requisite contacts with the forum state. *See, e.g., Equifax,* 905 F.2d at 1357–60 (former branch manager had sufficient minimum contacts with forum state by virtue of employment relationship with Kansas employer; action to enforce covenant not to compete); *Sprint v. DeAngelo,* 12 F.Supp.2d 1184 (D.Kan.1998) (same). Indeed, and as was true in *Equifax,* each of the individual defendants maintained regular contact with Thermal Components' Kansas office by telephone, mail and electronic data communications. *See Equifax,* 905 F.2d at 1358. The individual defendants' payroll and benefits records were maintained and processed by plaintiff's

Kansas office. Each of the individual defendants were physically present in Kansas at some point during their respective tenures as Thermal Components' employees, whether for job training or to visit plaintiff's Kansas office for business purposes. The constitutionally-required minimum contacts are present here despite the fact that, with the exception of Mr. Griffith who worked for plaintiff in the state of Kansas at the beginning of his employment relationship with Thermal Components, defendants worked in plaintiff's Missouri office. *See id.* at 1359 ("That defendant's employment duties were carried out exclusively in California, however, cannot defeat jurisdiction.")

Moreover, if the facts are as represented by plaintiff, the defendants' use of confidential information gained as a result of the defendants' employment with the plaintiff to divert clients from Thermal Components constitutes a breach of the duty of loyalty, a duty arising from the individual defendants' previous agency relationship with the plaintiff. As former employees of plaintiff, the individual defendants were surely aware that any deleterious effects resulting from the acts complained of here would certainly be realized by the plaintiff in its home state. As an entity capitalizing on the knowledge held by plaintiff's former employees, defendant Thermotech should have been aware that its role in benefitting from the individual defendants' tortious activities would harm plaintiff, a Kansas resident, and that the derivation of such benefits at plaintiff's expense would require it to defend itself in the plaintiff's forum state. Thus, the court concludes that the defendants' contacts with this state are sufficient to subject them to the jurisdiction of this court.

**2. Reasonableness**

■ As set forth above, once satisfied that a defendant has sufficient minimum contacts with the forum, the court must then determine whether the exercise of jurisdiction is reasonable such that it comports with "traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Where a nonresident has purposefully directed its activities toward the resident plaintiff, the defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477, 104 S.Ct. 1868. Although "a State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," that interest does not allow the forum to unreasonably exercise jurisdiction over nonresident defendants. *Burger King,* 471 U.S. at 473, 105 S.Ct. 2174.

Defendants have failed to show that requiring them to defend here would offend traditional notions of fair play and substantial justice. The only reasons offered by defendants to support their contention that this court's exercise of personal jurisdiction is unreasonable are that none of the defendants reside in the state of Kansas and that, by their actions, defendants could not have reasonably anticipated being haled into court here. The court considers these arguments in turn.

First, although certainly relevant to the reasonableness inquiry, the fact that defendants reside in a state other than Kansas is not dispositive, and the court does not find requiring defendants' to travel from Missouri to defend this action so unduly burdensome as to implicate defendants' due process rights. Moreover, despite defendants' assertions to the contrary, the court simply does not believe that it would be unreasonable for defendants to expect that, if they did in fact commit the tortious conduct alleged by plaintiff in this case, they would be forced to defend themselves in the state in which plaintiff, the entity injured by defendants' tortious activities, resides. Indeed, it is inherently reasonable to expect that, if one were to misappropriate trade secrets garnered during the course of his or her

employment relationship with a Kansas resident, the Kansas resident would seek redress for any injuries caused by such tortious conduct in a court located in the state of its residence. In short, nothing in defendants' papers convinces the court that it would be unreasonable to require them to defend the action here. Accordingly, the court concludes that plaintiff has met its burden to establish that this court may properly exercise personal jurisdiction over the defendants in this case.

### III. Improper Venue

■ Additionally, in their opening brief, defendants assert that this action must be dismissed for improper venue. In response, plaintiff argues that, because this case was originally filed in state court, venue is proper under 28 U.S.C. § 1441, the federal removal statute. In reply to plaintiff's memorandum in opposition, defendants do not address the arguments advanced by plaintiff with respect to this issue.

Federal removal jurisdiction is a creature of federal statute. The general removal provision, 28 U.S.C. § 1441(a), provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ..., to the district court of the United States for the district and division embracing the place where such action is pending." By its terms, § 1441 requires a basis for federal subject matter jurisdiction; thus, "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). There is no dispute that federal subject matter jurisdiction over this dispute is conferred by 28 U.S.C. § 1332, the general diversity jurisdiction statute.

Once the threshold subject matter jurisdiction requirement is met, § 1441(a) provides that proper venue for a removed action is "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The United States District Court for the District of Kansas "embraces" the District Court of Johnson County, Kansas, the court in which this action was pending when defendants filed their Notice of Removal. Accordingly, this court is the proper venue for the removed action.

Section 1441's clear language notwithstanding, in their opening brief, defendants ignore the express terms of § 1441(a), and instead contend that the general venue provisions of 28 U.S.C. § 1391 govern venue in this action. That section specifies three venue possibilities in a diversity case: (1) in a district "where any defendant resides if all defendants reside in the same state," (2) in a district where a substantial part of the cause of action accrued, and (3) any district in which any defendant is subject to personal jurisdiction, "if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a).

Defendants' reliance upon § 1391's general venue provisions to support their objection to venue in this case is misplaced. Indeed, § 1391's utility in removal actions was flatly renounced by the United States Supreme Court in 1953. *See Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331 (1953). In that case, the Court explained that "on the question of venue, § 1391 has no application to this case because this is a removed action," and venue in removal actions is governed by § 1441. *Id.* at 665, 73 S.Ct. 900. Whereas "[s]ection 1391(a) limits the district in which an action may be 'brought' ... [t]his action was not 'brought' in the District Court, nor was [defendant] 'sued' there; the action was brought in a state court and removed to the District Court." *Id.* at 666, 73 S.Ct. 900. Consequently, § 1441(a), not § 1391, controls venue in removal actions. *Id.* The removal action venue principles announced in *Polizzi* have been recently reaffirmed

by courts faced with the issue. *See, e.g., PT United Can Co. v. Crown Cork & Seal Co., Inc.,* 138 F.3d 65, 72 (2d Cir.1998); *Peterson v. BMI Refractories,* 124 F.3d 1386, 1392 (11th Cir.1997).

Accordingly, because this court is the proper venue for this removal action, defendants' motion to dismiss for improper venue is denied.

## IV. Insufficiency of Service of Process on Defendant Thermotech

■ It is uncontested that Don Chaney is the registered agent for defendant Thermotech. On February 23, 2000, a copy of the summons and petition in this case was left with a secretary employed by the firm of Chaney & McCurry, the law firm with which Mr. Chaney practices. Defendants maintain that, because Mr. Chaney's secretary was not herself designated as the registered agent for Thermotech, defendant Thermotech should be dismissed from this action on the basis of insufficient service of process. As discussed below, because the record before the court indicates that proper service on defendant Thermotech was subsequently obtained on March 9, 2000, the court denies defendant's motion with respect to this issue.

In its papers, plaintiff asserts that Mr. Chaney was properly served with process on March 9, 2000, and thus that, even if the February 23, 2000 service was insufficient, the March 9, 2000 service corrected any deficiency, and defendant Thermotech's contention that it should be dismissed for insufficiency of process is, as a result, moot. A proof of service executed by the process server verifying the March 9, 2000 date of service is attached to plaintiff's response to defendant's motion to dismiss. *See* Pl.Mem. in Opp., Ex. J. The March 9, 2000 service date falls within the ninety days allowed for service of process after a petition is filed. *See* K.S.A. § 60–203(a)(1). Defendant Thermotech does not address the issue in its reply brief, and thus does not expressly challenge the sufficiency of plaintiff's second attempt to serve Thermotech. Taking as true plaintiff's uncontroverted assertion that Mr. Chaney, acting as Thermotech's registered agent, has now been properly served on Thermotech's behalf, defendant Thermotech's motion to dismiss for insufficient service of process is denied.

## V. Venue Transfer

As an alternative to its motion to dismiss for lack of personal jurisdiction, defendant moves the court to transfer this case to the Western District of Missouri, Southern Division. Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides in pertinent part: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

■ Section 1404(a) affords the district court broad discretion to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness. *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1516 (10th Cir.1991). "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Id.* at 1515. "[U]nless the balance is strong in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992) (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.,* 467 F.2d 662, 664 (10th Cir. 1972)). The court must consider the following factors in determining whether to transfer a case:

the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a

fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516.

██ The court concludes that defendants have not adequately established that the present forum is inconvenient and that transfer is warranted here. Defendants suggest that, in the interest of justice and for the convenience of the parties, the court should transfer the case to the Western District of Missouri. To support this contention, defendants explain that all parties are subject to jurisdiction in Missouri, that the vast majority of the witnesses in this case live in the Springfield, Missouri area, and that the alleged tortious conduct for which plaintiff seeks damages occurred in Missouri. In contrast, plaintiff asserts that the distance between Springfield, Missouri and this courthouse is not so significant that requiring defendants to travel here is unduly burdensome, that many of plaintiff's own witnesses are located in Kansas, that plaintiff's presumptive choice of forum should not be disturbed, and that transferring the case to Missouri would simply serve to shift the burden of inconvenience from defendants to the plaintiff.

The court is unpersuaded by defendants' claim that a transfer of venue is warranted in this action. There has been no showing that litigation in Kansas will impose a disproportionate burden on defendants. To that end, the court notes that in this modern age of technology, where many court appearances may take place over the telephone (as is the practice of this judge), the burden of litigation imposed upon nonresident defendants is considerably decreased. *See Rainbow Travel Serv., Inc. v. Hilton Hotels Corp.*, 896 F.2d 1233, 1238 (10th Cir.1990) ("[M]odern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity") (quotation omitted).

In short, defendants have not established that the inconvenience of a trial in Kansas outweighs the inconvenience that would be visited on plaintiff if the case were transferred to Missouri. Consequently, because a venue transfer would succeed only in shifting the inconvenience to plaintiff, the court will not disturb plaintiff's legitimate choice of forum, which is entitled to great weight. *See Heating & Cooling Master Marketers Network, Inc. v. Contractor Success Group, Inc.*, 935 F.Supp. 1167, 1172 (D.Kan.1996); *Pehr v. Sunbeam Plastics Corp.*, 874 F.Supp. 317, 321 (D.Kan.1995). Accordingly, defendants' motion to transfer venue is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss for lack of personal jurisdiction, or, alternatively, for transfer of venue to the United States District Court for the Western District of Missouri, Southern Division and defendant Thermotech's separate motion to dismiss for insufficient service of process (doc. 4) is denied in its entirety.